**R. I. ARMS & SPORTS CENTER, LTD., et al.**

v.

**W. Edward WOOD.**

**No. 82-15-Appeal.**

Supreme Court of Rhode Island.

Oct. 27, 1982.

DiSandro-Smith & Associates, P.C. Inc., Edmond A. DiSandro, Providence, for plaintiffs.

Charles E. DiLeva, Legal Counsel, Dept. of Environmental Management, Providence, for defendant.

## OPINION

KELLEHER, Justice.

This civil action originated in the United States District Court for the District of Rhode Island. The plaintiffs, who are duly licensed retail sellers of handguns, have alleged a violation of their constitutional rights and consequently have sought to enjoin the defendant, who at the time this litigation began was the director of the State Department of Environmental Management (DEM),[1] from enforcing a portion of the Rhode Island Firearms Act, specifically, G.L.1956 (1981 Reenactment) § 11–47–35, which, in its pertinent parts, requires that all potential purchasers of handguns pass a basic firearms-safety course that is administered by the DEM and then present to the retailer a certificate of successful completion of the course prior to the effectuation of any purchase.

Before the District Court judge would consider the constitutional claims, he invoked the provisions of our Rule 6 and asked for our response to a certified question of law, in which he asks whether plaintiffs, as duly licensed retailers of handguns, were subject to the certification requirements spelled out in § 11–47–35. In his order of certification, the District Court judge observed that DEM takes the position that the certification requirement applies to the dealerships, whereas plaintiffs argue that unless they are "exempt from the certification requirement, they are effectively and unconstitutionally prohibited from purchasing handguns for resale."

At oral argument, it appeared that something was lost in the transmission as this case made its way here from the District Court. This observation may be explained by referring to DEM's comment in its brief, wherein it notes that "[t]here apparently has been some confusion during the discovery proceedings of this matter which led plaintiffs and the federal court to assume that DEM would require handgun safety certificates of dealers who are buying guns at wholesale for the purposes of retail sale. This is not the case." At oral argument, DEM's counsel assured us that the department and its director are of the firm belief that the statute exempts licensed retail dealers from the safety-certificate requirement.

_____

1. At the present time Mr. Wood serves as director of the Department of Transportation.

We have examined the statute in question, and this concession finds ample legal support. Although § 11–47–35 may not be considered the epitome of precise legislative draftsmanship, the provisions of § 11–47–35 do require that a handgun purchaser fill out an application, the content of which is spelled out in the statute, and deliver the application to the dealer. The purchaser shall also present to the dealer a safety certificate from DEM indicating that he or she has completed the basic safety course. The seller in turn forwards the original and the duplicate copy of the application to either the Superintendent of the Rhode Island State Police or to the chief of police of the municipality in which the seller has either a residence or a place of business. It is the duty of the police to make a "background check" of the applicant; and if the seller receives no disqualifying information from the police within a seventy-two-hour period beginning at noon of the day following the seller's receipt of the application, the sale can then be consummated and the firearm delivered to the buyer. The last sentence of § 11–47–35(a) specifically provides that the "provisions of this section shall not apply to bona fide sales at wholesale to duly licensed retail dealers, nor to purchases by retail dealers duly licensed under the provisions of § 11–47–39." [2]

Thus it is that we respond to the District Court's inquiry in the negative. Retail sellers of handguns are not required to comply with the safety-certificate provisions of § 11–47–35 when purchasing for resale to others newly manufactured or used handguns.

**2.** General Laws 1956 (1981 Reenactment) § 11–47–39 vests the licensing power in the various municipal licensing authorities of this state. The license issued is valid for a period of one year. All sales are to be carried on only in the premises designated in the license, and no sale is to take place unless the purchaser is personally known to the licensee or presents credible evidence of his identity.